## Jacoby v. Farnsworth Camping Center

*Joel Weisber,* for plaintiff.
*Alvin J. Luschas,* for defendant.
*Robert A. Eckenrode,* for additional defendant.

KREHEL, *P.J.*, May 21, 1981—The nonjury trial in this matter was held on May 20 and 21, 1981, two years after the identifying number shifted from Equity no. 1240-1978, to CV-79-2852, and nearly four years after plaintiff, Frank M. Jacoby, took possession of this motor home on June 18, 1977, at defendant's place of business, Farnsworth Camping Center, Inc. Additional defendant, Pace Arrow of Pa., Inc., has been visible in this matter from sometime after the initial contact of plaintiff and defendant, in September, 1976, as the review of the testimony, and exhibits, shall reveal. Somewhat curiously, this motor home, after nearly four years of complaints, garage visits, photographic exhibits showing the motor home in less than mint condition, and described with a vocabulary never reaching a mule skinner's utterances, was driven by plaintiff a "month ago"!

To arrive at a verdict in this nonjury trial, this trial judge distilled his 13 pages of trial notes, and reviewed documents and photographs to itemize findings of fact, then followed with discussion and conclusions, within the required seven days, plus the additional Memorial Day Holiday. We submit, therefore, the following

## FINDINGS OF FACT

1. Plaintiff, Frank M. Jacoby (a/k/a Frank Jacobowicz, because of his East European heritage), is an adult residing in Kulpmont, Northumberland County, who signed a bill of sale agreement on September 21, 1976, for a $14,500 motor home, with defendant, Farnsworth Camping Center, Inc., Elysburg, Northumberland County, with cash down payment of $1,000; the motor home

being a Pace Arrow, for which defendant was a franchised dealer since 1970.

2. The said bill of sale (plaintiff's Exhibit no. 1), signed by both plaintiff and Richard Farnsworth, for his defendant corporation, indicated on its face "no additional optional equipment;" Richard Farnsworth testified that it was a "take it as is" stock model motor home on the lot, and that plaintiff knew that there was no front, or automotive air-conditioner. It was a "close out model."

3. Plaintiff and defendant, Richard Farnsworth, agreed that the balance of $13,500 was due in 30 days, and plaintiff made payments of $6,000 on October 12, 1976, and $4,500 on October 18, 1976, leaving balance due of $3,000 to be paid upon delivery; said delivery was initially set for March, 1977, and postponed until June 18, 1977. Payments are noted on plaintiff's Exhibit no. 1.

4. Plaintiff, with consent of defendant, moved the motor home off defendant's lot on March 21, 1977, causing slight damage to the back bumper, which required the motor home to be driven to the manufacturing and service plant of Pace Arrow of Pa., Inc., additional defendant, three miles from defendant's lot, in Paxinos, Northumberland County.

5. Plaintiff received from defendant a plastic card upon which was imprinted a one-year manufacturer's (here Pace Arrow of Pa., Inc.,) full warranty (Plaintiff's Exhibit no. 2); said full warranty specifically excludes the engine, tires, chassis, and batteries. Additional defendant had performed work service on the mobile home in September and December, 1976, in the total sum of $190, which defendant paid (see Exhibit No. 5).

6. Plaintiff was hospitalized in November, 1976,

and had his wife inquire about rescinding the sales agreement, with conflicting testimony by plaintiff that defendant wanted his commission of $1,500, and payment for service to additional defendant of $190; while defendant testified that plaintiff would forfeit his down payment of $1,000, if he tried to rescind.

7. Plaintiff visited the motor home on defendant's lot periodically between January and June, 1977, with knowledge and permission of defendant, and drove it off the lot on March 21, 1977, as far as the intersection in Elysburg, about a mile.

8. At time of delivery on June 18, 1977, defendant had plaintiff sign "Ownercare Delivery Checkout," upon receipt of $3,000 balance, and gave copy to plaintiff, together with owner's manual; the "Ownercare Delivery Checkout" is marked defendant's Exhibit No. 1.

9. Plaintiff testified that upon leaving defendant's lot on Saturday, June 18, 1977, and intending to reach the Atlantic seashore, he travelled approximately 38 miles to Pottsville, Schuylkill County, where he was forced to stop because of "excessive water leakage" from heavy rain which he stated had penetrated throughout the mobile home; plaintiff cancelled his trip to "the shore," returned to the Elysburg-Paxinos area by Monday, June 20, 1977, reciting his problem of water leakage to both defendant and additional defendant.

10. Plaintiff testified that he returned the motor home to Pace Arrow about 15 times, was *never* refused service, was *never* charged for any service, had signed "something" on each occasion that he took possession of his motor home, but that they (Pace Arrow) "didn't do anything;" that he last took it from Pace Arrow on May 15, 1978, that he never

took it back, "what's the use?" "Frustrated," "Sick," yet admitted that he last drove it a "month ago—engine not going good now," which can be fixed at about April 20, 1981.

11. Plaintiff testified that he had GMC "fix the engine" by "replacing a distributor cap" and "remove a loose spark plug wire." He also testified that Pace Arrow replaced the roof with a seamless single sheet, but did not replace the engine cover shield in the automotive section which "caused excessive heat" for the driver.

12. Testimony and photographic exhibits offered by plaintiff's witness, Bernard Kaminski, of his observations of the motor home on May 15, 1978, and June 12, 1978 (Plaintiff's Exhibits nos. 4-A, 4-B, 4-C, 4-E, 4-F, 4-G, 4-H, 4-I, 4-J, and 4-K), ranged over this vehicle's engine "power," defroster, engine cover shield, caulking at windows, water leakage throughout, but did not know of plaintiff's use of his motor home from June, 1977, until May 15, 1978. He was with this vehicle when it was parked at Midvalley, Columbia County, on May 15, 1978, and next saw it to photograph at Kulpmont, Northumberland County, on June 12, 1978.

13. Testimony and photographic exhibits offered by Richard Farnsworth included viewing this motor home at Marion Heights, Northumberland County, on October 1, 1979, revealing in defendant's photo Exhibit nos. 2, 3, 4, and 5, interior shots of roof vents pulled out, and exterior shots of roof area damage, as well as rear back bottom damage. Examination of this vehicle was made in the company of plaintiff's counsel, but not in plaintiff's presence.

14. Plaintiff's Exhibit No. 5 consisted of thirteen Pace Arrow service shop work sheets (two prior to

plaintiff's acceptance of delivery of motor home), accumulating 205 hours of labor to service plaintiff's complaints between June 18, 1977 and May 15, 1978.

15. No testimony or documentation of money damages was offered by plaintiff. His position, offered by his counsel, was to get a refund of his purchase price of $14,500, so as to be "put in as good a position as before" entering into this sales agreement with defendant.

16. Defendant Farnsworth did not issue a warranty, nor did he declare any indemnification to plaintiff. The full warranty in this matter emanates from the manufacturer (plaintiff's Exhibit No. 2), with its specific exclusions.

## DISCUSSION AND CONCLUSIONS

Plaintiff Jacoby seeks rescission of the sales contract and a refund of his purchase money of $14,500 under two theories of liability: (1) Certain sales provisions of the Uniform Commercial Code, specifically 12A P.S., §§2-606, 2-608, now 13 Pa.C.S.A. §§2606, 2608; and (2) the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act of January 4, 1975, 88 Stat. 2183, 15 U.S.C.A. §2301 et seq.

The first theory of liability involves the application of the sales provisions of the Uniform Commercial Code. In evaluating plaintiff's claim for rescission this trial judge is faced with two issues: (1) Did plaintiff accept the motor home under 12A P.S. §2-606, now 13 Pa.C.S.A. §2606 and (2) Did plaintiff effectively revoke his acceptance under 12A P.S. §2-608, now 13 Pa.C.S.A. §2608?

Acceptance of goods occurs when the buyer either signifies his acceptance to the seller after a

reasonable opportunity to inspect the goods or does an act inconsistent with the seller's ownership: 12A P.S. §2-606. In this nonjury trial there is no doubt that plaintiff accepted the motor home. On innumerable occasions, from the signing of the sales contract on September 21, 1976, until plaintiff drove his motor home off defendant's lot on June 18, 1977, Jacoby visited this vehicle, awaiting the day of his final $3,000 payment, to be off "for the shore."

Plaintiff also argues that he effectively revoked any acceptance he made when he had his wife inquire in November, 1976, during his hospitalization, if he could have his money back, only to learn from defendant Farnsworth that plaintiff would pay defendant's commission of $1,500, and pay additional defendant's repair costs of $190. Further, by his lawsuit, plaintiff seeks to rescind nearly three years later.

Revocation under section 2-608 must occur within a reasonable time after the buyer discovers or should have discovered the ground for it, and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. Revocation herein was attempted initially by the inquiry of plaintiff's wife hereinbefore described. Plaintiff's lawsuit, nearly three years after the delivery of the unit was clearly too late for an effective revocation. Further, revocation must be effected before any changes in the condition of the goods. The testimony and photo exhibits revealed that this motor home really had no "home." It was depicted at Midvalley, and at Kulpmont, at Marion Heights and at the Pace Arrow manufacturing and service plant in Paxinos, from delivery on June 18, 1977 to

October 1, 1979. And still plaintiff had it out driving "a month ago," about April, 1981.

For the foregoing reasons we do not believe that plaintiff's request for revocation is justified.

Plaintiff also contends he is entitled to a refund of his purchase money under 15 U.S.C.A. §2304(a)(4) of the Magnuson-Moss (Federal Consumer Product Warranties) Act, which provides:

"In order for a warrantor warranting a consumer product by means of a written warranty to meet the Federal minimum standards for warranty—. . . "(4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replaclement without charge of, such product or part (as the case may be) . . ."

The statute specifies that a consumer has the right to elect to receive a refund only if the product has defects which survive a reasonable number of attempts by the warrantor to repair them. How many attempts to remedy any defects does the warrantor have? In this nonjury trial, plaintiff's Exhibit no. 5 clutches thirteen workshop orders of Pace Arrow, additional defendant, who manufactured this product. A total of 205 hours were spent to satisfy plaintiff's complaints, and plaintiff signed all but three of these 13 workshop orders indicating acceptance. Since May 15, 1978, plaintiff has not returned the motor home to either defendant Farnsworth or additional defendant Pace Arrow.

Jacoby testified that he would not take this vehicle back to Pace Arrow again. It is plaintiff in this nonjury trial who states "what's the use?" "Frus-

trated," "Sick," in effect, no more attempts to remedy any defects.

And the same plaintiff testifies that he drove it last "just a month ago—engine not going good now." The "engine" is specifically excluded from the full warranty of the manufacturer, Pace Arrow. This plaintiff knew, and knows, because he has gone to a GMC dealer to remedy this engine.

Defendant Farnsworth is out of the line of fire because he is not a warrantor. His actions over the years of these complaints, and the testimony of Richard Farnsworth on the profit motive, may appear inelegant, but not coated with liability.

Additional defendant Pace Arrow exhausted its efforts for a remedial solution to plaintiff's complaints. And there being no specific testimony on money damages, other than refund of the total purchase sum, this trial judge concludes this verdict-opinion as follows:

## VERDICT

The Trial Judge in this non-jury trial finds:

(a) for defendant, Farnsworth Camping Center, Inc., and against plaintiff, Frank M. Jacoby; and

(b) for additional defendant, Pace Arrow of Pa., Inc., and against plaintiff, Frank M. Jacoby.